UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| NIKKI J. VESTAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00155-JMS-MJD |
| | ) | |
| HEART OF CARDON, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY

Plaintiff Nikki Vestal worked as a Certified Nursing Assistant for a short time at Lyons

Health and Living Center, operated by Defendant Heart of CarDon, LLC (which the Court will

refer to as "Lyons"), while coping with the effects of diabetes. On four occasions, she suffered

complications from her diabetes which caused her to leave work early. On a fifth occasion, she

suffered an episode which three Lyons employees believed to be the result of methamphetamine

use—not her diabetes. The employees requested that Ms. Vestal provide a urine sample for a drug

test. The test, according to Lyons, was positive for methamphetamine, and so later that day Lyons

terminated Ms. Vestal's employment. Lyons, however, failed to follow its written protocols for

administering a drug test, and no record of the positive result exists. Moreover, the episode closely

followed a written warning threatening termination if Ms. Vestal did not improve her attendance.

Ms. Vestal adamantly maintains that she has never used methamphetamine and was not under the

influence of methamphetamine at the time of the episode.

Taken together, Ms. Vestal asserts that Lyons' explanation for her termination—that she

was working while under the influence of methamphetamine—is a pretext and that Lyons actually

terminated her because she was diabetic or because it did not want to accommodate her diabetes.

In addition to this claim, brought under the Americans with Disabilities Act ("ADA"), Ms. Vestal

alleges claims under the Rehabilitation Act and state law. Before the Court is Lyons' Motion for Summary Judgment, [Filing No. 53], in which Lyons argues that it is entitled to judgment in its favor on all of Ms. Vestal's claims. Resolving all factual disputes in the nonmovant's favor, Ms. Vestal has demonstrated that a genuine issue of material fact exists as to whether she was terminated in violation of the ADA. The remainder of her claims, however, fail for lack of evidence or due to legal shortcomings. The Court therefore **GRANTS IN PART** and **DENIES IN PART** Lyon's Motion, permitting Ms. Vestal's ADA claim to proceed to a negotiated resolution or trial.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not suffice to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### FACTS FOR SUMMARY JUDGMENT

The following factual background is set forth pursuant to the standards detailed above.  The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made."  *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.  Ms. Vestal's Employment

Ms. Vestal began working for Lyons as a Certified Nursing Assistant on January 13, 2016.  [Filing No. 55-1 at 4; Filing No. 55-7 at 1.]  On her Employee Health Statement, submitted to Lyons as a condition of her employment, Ms. Vestal indicated that she has diabetes.  [Filing No. 55-12 at 2.]  At that time, Ms. Vestal had gestational diabetes.  [Filing No. 55-1 at 23.]  In late January or early February 2016, Ms. Vestal was diagnosed with Type II diabetes.  [Filing No. 55-1 at 23.]  Ms. Vestal immediately informed Angie Jackson, Director of Nursing at Lyons, of her diagnosis.  [Filing No. 55-1 at 23.]  Ms. Vestal also told Ms. Jackson and many of her coworkers where she kept her medication and emergency contact information in case she had a diabetes-related episode while at work.  [Filing No. 55-1 at 23-24.]  Ms. Vestal did not, however, report any need for accommodations to the Corporate Benefits Manager, as outlined in Lyons' ADA policy.  [Filing No. 55-1 at 7; Filing No. 55-1 at 10; Filing No. 55-17.]

Between January 13, 2016, when she began working for Lyons, and her termination on May 2, 2016, Ms. Vestal suffered four diabetes-related episodes at work during which her blood sugar dropped severely.  [Filing No. 55-18 at 6.]  During each episode, Ms. Vestal became dizzy and/or passed out.  [Filing No. 55-1 at 24; Filing No. 55-18 at 6.]  On three occasions, Ms. Vestal's

coworkers called her husband, who then took Ms. Vestal home from work; on a fourth, Ms. Vestal's coworker took her home. [Filing No. 55-18 at 6.]

On April 13, 2016, Ms. Jackson gave Ms. Vestal an "Employee Communication Form" with a box marked "Absenteeism" checked. [Filing No. 56-2 at 1.] In the section marked "Employer Statement Regarding Incident/Occurrence," Ms. Jackson wrote:

> Nikki has had three times of calling in within her 1st 90 days of employment and leaving early on one occasion. Nikki cannot miss any more work within 1st 90 days or will be self-termination. Nikki needs to remember that Lyons residents, family, and employees count on her for being at work when scheduled.

[Filing No. 56-2 at 1; *see* Filing No. 56-1 at 14 (deciphering handwritten document).] Ms. Jackson spoke with Ms. Vestal about the report but could not remember whether Ms. Vestal mentioned her diabetes during the meeting. [Filing No. 56-1 at 16.]

### B. Episode Leading to Termination

On May 2, 2016, Ms. Vestal suffered another episode at work after changing her diabetes medication from Faxiga to Invokana. [Filing No. 56-7 at 16.] Ms. Vestal informed her coworkers that she had changed her medication. [Filing No. 56-7 at 16-17.] She was feeding residents and eating her breakfast when, a few hours into her shift, she began seeing spots, feeling dizzy, sweating, and feeling sick to her stomach. [Filing No. 56-7 at 19.] Ms. Vestal went to check her blood sugar and noted that it had dropped and was not rebounding. [Filing No. 56-7 at 23.] Ms. Vestal asked for help and was given a wheelchair and orange juice. [Filing No. 56-7 at 19.]

Two Lyons employees, Ms. Jackson and Assistant Director of Nursing Cathy Crane, witnessed Ms. Vestal's episode and testified that they believed Ms. Vestal's episode to be symptomatic of drug use. [Filing No. 56-1 at 18-26; Filing No. 55-6 at 2-3.] In addition to the sweatiness and dizziness, they claim that Ms. Vestal picked at sores on her face and legs, had slurred speech, and could not drink from her orange juice, among other things. [Filing No. 56-1

at 18-26; Filing No. 55-6 at 2-3.] Ms. Vestal, for her part, denies several of these symptoms and explains that the "sores" were the result of an impetigo infection which she did not pick. [Filing No. 56-7 at 29-36.] It is Ms. Vestal's testimony which the Court must credit in considering Lyons' summary judgment motion.

Upon observing Ms. Vestal, Ms. Jackson requested that Ms. Vestal take a urine drug test. [Filing No. 56-4.] Here, the parties' stories differ significantly. Lyons, properly hewing to the stringent summary judgment standard, sets forth the events as described by Ms. Vestal in her discovery responses and at her deposition: Ms. Vestal was asked to take a urine test and attempted—but was unable—to do so. [Filing No. 59-1 at 5.] Under this version of the facts— Ms. Vestal's—the positive drug screens to which Ms. Jackson, Ms. Crane, and Health Administrator Lisa Bloesing attested, [Filing No. 56-4 at 1; Filing No. 56-5 at 1; Filing No. 56-6 at 5-6], were completely fabricated because Ms. Vestal never provided a urine sample.

In her summary judgment briefing however, Ms. Vestal now seeks to embrace parts of Lyons' version of the facts, which is that she was able to provide a sample, but the positive result was fabricated because she had not used methamphetamine. Further, she complains that the testing failed to comply with any of Lyons' policies for drug testing, which provides in part:

**Policy Implementation**

If the Company suspects that an associate's job performance or on-the-job behavior may have been affected in any way by alcohol or drugs, or that an associate has otherwise violated the Substance Abuse Policy, the Company will require an oral screening test, blood test, urinalysis, or other drug/alcohol screening. Testing may include, but not be limited to, tests for cocaine, methamphetamine, THC, and opiates.

1. The associate must complete the necessary drug information and consent form prior to testing. Failure or refusal to complete the necessary paperwork is grounds for immediate discharge.
2. If confirmed test results are unsatisfactory (positive), then the associate may request a follow-up confirmation test.
3. Records pertaining to an associate's test results, rehabilitation requests, or treatment will be handled confidentially, maintained in files separate from the associates personnel file, and disclosed only to those having a legitimate need to know the information.

[Filing No. 56-9 at 1.] Ms. Vestal was not asked to complete any "drug information" or consent form and was not provided an opportunity for a "follow-up confirmation test." [Filing No. 56-1 at 38-39.]

Nor did the testing comply with the drug test's instructions, which provided in part:

> **LIMITATIONS**
>
> 1. The **RealityCheck** Integrated Specimen Cup provides only a qualitative, preliminary analytical result. A secondary analytical method must be used to obtain a confirmed result. Gas chromatography/mass spectrometry (GC/MS) is the preferred confirmatory method.[1,4,3]
> 2. There is a possibility that technical or procedural errors, as well as interfering substances in the urine specimen may cause erroneous results.
> 3. Adulterants, such as bleach and/or alum, in urine specimens may produce erroneous results regardless of the analytical method used. If adulteration is suspected, the test should be repeated with another urine specimen.
> 4. A positive result does not indicate level or intoxication, administration route or concentration in urine.
> 5. A negative result may not necessarily indicate drug-free urine. Negative results can be obtained when drug is present but below the cut-off level of the test.
> 6. This test does not distinguish between drugs of abuse and certain medications.
> 7. A positive test result may be obtained from certain foods or food supplements.

[Filing No. 56-12 at 6.] Lyons did not employ a "secondary analytical method" as required by the kit to "obtain a confirmed result." [Filing No. 56-1 at 38-39.]

Whether Ms. Vestal was able to provide a urine sample or not, the parties largely agree on the rest of the story, at least as filtered through the proper summary judgment standard.[1] Ms. Vestal's husband arrived to take Ms. Vestal home and found Ms. Vestal passed out in the bathroom. [Filing No. 56-7 at 24.]

Later that day, Ms. Jackson called Ms. Vestal and informed her that her drug test was positive for illegal drugs and that she was fired. [Filing No. 56-1 at 5.] Ms. Jackson, Ms. Bloesing, and Ms. Crane have each made statements or testified that Ms. Vestal was fired for her positive

---

[1] The issue regarding any physical contact between Ms. Crane and Ms. Vestal as Ms. Vestal attempted to provide a sample is addressed below in the Court's discussion of Ms. Vestal's negligent infliction of emotional distress claim.

test.[2] [Filing No. 56-4 at 1; Filing No. 56-5 at 1; Filing No. 56-6 at 5-6.] Crediting Ms. Vestal's assertion that she had not used methamphetamine, Ms. Vestal was fired either as the result of a fabricated drug test or a drug test which did not comply with Lyons' policies nor the testing kit instructions. No record of Ms. Vestal's positive test exists. [Filing No. 56-10 at 11-12.]

### C. Procedural History

Ms. Vestal filed suit against Lyons on April 5, 2017, [Filing No. 1], and amended her complaint on December 28, 2018 to allege federal claims under the ADA and the Rehabilitation Act and state law claims for negligent administration of a drug test and negligent infliction of emotional distress, [Filing No. 41].[3] On March 14, 2018, Lyons filed its Motion for Summary Judgment, seeking judgment in its favor on all of Ms. Vestal's claims. [Filing No. 53.] Lyons' Motion is ripe for decision.

**III.**
**DISCUSSION**

The Court addresses Lyons' summary judgment arguments as to each of Ms. Vestal's claims in turn.

### A. ADA Claims

Lyons argues that Ms. Vestal cannot establish a prima facie case under the ADA for either discrimination or failure to provide a reasonable accommodation. [Filing No. 54 at 8-17.] First, as to Ms. Vestal's discrimination claim, Lyons argues that Ms. Vestal lacks evidence that she was fired because of her diabetes. [Filing No. 54 at 9-13.] Instead, Lyons asserts that the evidence

---

[2] Lyons' insistence that the undisputed evidence shows that Ms. Vestal was terminated solely because she was perceived to be acting under the influence of drugs is belied by the record. At a minimum, there exists a genuine issue of material fact as to this point because of the evidence demonstrating that Ms. Vestal was fired for the allegedly positive drug test.

[3] Ms. Vestal voluntarily dismissed her claims under the Indiana Wage Claims Statute without prejudice. [Filing No. 48.]

shows that she was fired because of its employees' reasonable belief that she was working under the influence of illegal drugs. [Filing No. 54 at 9-12.] Lyons argues that there is no other evidence, such as discrimination toward disabled employees, a shifting rationale for firing Ms. Vestal, or less favorable treatment compared to nondisabled employees, which would undermine this sincere belief. [Filing No. 54 at 12-15.] Second, as to Ms. Vestal's failure to accommodate claim, Lyons argues that Ms. Vestal never requested an accommodation and that, to the extent an accommodation was required, one was provided. [Filing No. 54 at 15-17.]

In response, Ms. Vestal argues that Lyons has sufficient evidence of pretext to require a jury trial on her ADA claim. [Filing No. 57 at 12-18.] Ms. Vestal first argues that Lyons has shifted its explanation for firing her from the positive drug test to its "belief" that Ms. Vestal had been using drugs. [Filing No. 57 at 1-2.] Ms. Vestal argues that the alleged drug usage was a pretext for discrimination and a desire not to have to accommodate Ms. Vestal's need for time off. [Filing No. 57 at 13-17.] Ms. Vestal points to evidence of her written warning for attendance which threatened termination, the failure of Lyons employees to comply with its internal drug testing procedures, the failure of Lyons employees to comply with the drug test kit instructions, and the lack of any record from the drug test to support her argument. [Filing No. 57 at 13-17.]

In reply, Lyons argues that it is not shifting its explanation, but rather is taking as true Ms. Vestal's testimony that she did not complete a urine test—as it was required to on summary judgment. [Filing No. 59 at 2.] Lyons reiterates its arguments that Ms. Vestal was fired because its employees sincerely and reasonably believed that Ms. Vestal appeared to be under the influence of methamphetamine. [Filing No. 59 at 5-6.]

In surreply, Ms. Vestal argues that her pretext argument prevails regardless of whether a jury believes that she actually provided a urine sample. [Filing No. 60 at 2.] If a jury credits her

testimony that one was not given, then the entire claim that Ms. Vestal failed a drug screen was false. [Filing No. 60 at 2.] If a jury credits Lyons' employees' testimony that a sample was provided, then a reasonable jury could find that the result was contrived because no record exists or because the test failed to comply with the test kit's instructions and company policy. [Filing No. 60 at 2.] Either way, according to Ms. Vestal, a reasonable jury could find that Lyons terminated her not because it actually believed her to be under the influence of methamphetamine, but instead to avoid having to accommodate her need for time off due to diabetic episodes. [Filing No. 60 at 2.]

The ADA provides that "no [employer] shall discriminate against a qualified individual on the basis of disability . . . . ." 42 U.S.C. § 12112(a). Both Ms. Vestal's discrimination and failure to accommodate theories share two elements, neither of which is contested by Lyons on summary judgment: Ms. Vestal must show that 1) she is a "person with a disability" as defined in the ADA and 2) she is "qualified to perform the essential functions of her job with or without a reasonable accommodation." *Guzman v. Brown Cty.*, 884 F.3d 633, 641 (7th Cir. 2018).

To survive summary judgment on her disability discrimination theory, Ms. Vestal must additionally identify evidence which, if credited at trial, would establish that she suffered an adverse employment decision because of her disability. *Id.* This means that Ms. Vestal must show that there is a genuine issue of material fact as to whether Ms. Vestal's "disability was the 'but for' cause of h[er] discharge." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). The plaintiff may show this with "direct" evidence, such as an admission of discriminatory animus, or by "circumstantial" evidence, but as long as the plaintiff provides "enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate." *Id.* (quoting *Morgan v. SVT, LLC,*

724 F.3d 990, 996 (7th Cir. 2013)); *see Lauth v. Covance, Inc.* 863 F.3d 708, 716 (7th Cir. 2017)

("[W]e no longer recognize a distinction between direct or indirect evidence, and instead consider

all of the record to determine whether a causal link exists."); *Monroe*, 871 F.3d at 504 ("[W]e have

tried to move away from the many multifactored tests in employment discrimination cases and

decide, when considering the evidence as a whole, 'whether the evidence would permit a

reasonable factfinder to conclude that . . . . [a] proscribed factor caused the discharge." (internal

quotation omitted)).  Among the types of evidence that may undermine an employer's claim to a

legitimate reason for termination include an "employer's shifting or inconsistent explanations for

the challenged employment decision," *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d

573, 579 (7th Cir. 2003), an employer's noncompliance with its own policies, *Bagwe v. Sedgwick

Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 882 (7th Cir. 2016), evidence of a "pretextual reason"

for the termination, *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 660 (7th Cir. 2013),

and suspicious timing, *id.* at 659.

    Contrary to Ms. Vestal's assertion, Lyons' argument on summary judgment that Ms. Vestal

did not produce a drug test is not evidence of a shifting explanation—rather, it is Lyons' attempt

to adhere to the summary judgment standard and credit Ms. Vestal's testimony.  *Cf. Weinmann v.

McClone*, 787 F.3d 444, 446 (7th Cir. 2015) ("[A]s is generally true when summary judgment is

involved, we accept the plaintiff's version of the facts, without vouching for their ultimate

accuracy.").  Nonetheless, even without the evidence of a shifting explanation, the Court agrees

with Ms. Vestal that her discrimination claim cannot be resolved on summary judgment.

    First, Ms. Vestal has identified evidence suggesting that Lyons' reason for firing her was

pretextual—that is, that "the employer is dissembling" and has proffered an explanation for Ms.

Vestal's firing that is "unworthy of credence" due to "weaknesses, implausibilities,

inconsistencies, or contradictions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) (internal quotations omitted). Taking the evidence in the light most favorable to Ms. Vestal, Lyons fabricated a positive drug test. Ms. Vestal testified that she never used methamphetamine, so whether the test occurred or not, the positive result was a fabrication. This is exactly the type of evidence that, if credited by a jury, would undermine Lyons' assertion that it terminated Ms. Vestal because she worked under the influence of methamphetamine. *Cf. id.* at 572 ("If, as Florez contends, Strauss and Berry are lying about these events, then a reasonable trier of fact could find that Strauss and Berry fabricated their reports to create a false reason for terminating him. Under these circumstances, summary judgment is not appropriate.").

The wafer-thin distinction Lyons seeks to draw in the face of this evidence is that it terminated Ms. Vestal not because she tested positive or was in fact under the influence of methamphetamine, but because its employees reasonably perceived Ms. Vestal to be under the influence of methamphetamine. In support of this distinction, Lyons cites to the unremarkable proposition that an employer must prevail where it terminates an employee based upon a sincere belief that the employee engaged in misconduct. But the evidence contradicts Lyons assertion that it fired Ms. Vestal merely because its employees perceived Ms. Vestal to be under the influence of methamphetamine and not because of the positive drug test. [*E.g.*, Filing No. 56-1 at 5 ("[Ms. Jackson] remember[ed] us telling [Ms. Vestal] that she had tested positive for drugs, illegal drugs, and that unfortunately we were going to have to terminate her employment.").] Moreover, though Lyons does not acknowledge it, Ms. Vestal has provided evidence contradicting some of Lyons' employees' observations of her May 2, 2016 episode, testifying for example that she did not have any sores on her legs and did not pick any of her sores on her face, which were impetigo. But most

critically, the fabricated test allegation creates a genuine issue requiring a jury determination as to whether Lyons honestly believed that Ms. Vestal had been using methamphetamine.

Bolstering this conclusion is the evidence that Lyons failed to comply with its policies for drug testing, including by failing to offer Ms. Vestal an opportunity for a follow-up confirmation test. Nor did Lyons comply with the procedures outlined in the drug test kit itself, which warned that any results were preliminary unless and until the sample was tested using a second analytical method. Even more problematic for Lyons, no record whatsoever exists of Ms. Vestal's positive test. In short, Ms. Vestal's assertion that the positive test was fabricated and therefore not the genuine reason for her termination carries with it substantial circumstantial evidence.

Finally, Ms. Vestal has also identified evidence of suspicious timing. Her May 2, 2016 termination followed less than three weeks after Ms. Jackson issued Ms. Vestal a written warning threatening termination for absenteeism if Ms. Vestal again missed work, despite knowing that Ms. Vestal had diabetic episodes requiring her to leave work early. And it was Ms. Jackson who first accused Ms. Vestal of having used methamphetamine and requested the drug test. A juror could reasonably infer that Lyons sought to remove Ms. Vestal following the written warning and that the accusation of drug use, coupled with the contrived test, was a means to accomplish this end. A juror could also reasonably infer based upon all of this evidence that Lyons sought to remove Ms. Vestal because of her particular disability.

Lyons argues that this does not make sense because both Ms. Jackson and Ms. Bloesing also suffer from diabetes and because it hired Ms. Vestal despite knowing that she was diabetic. The Seventh Circuit very recently "rejected entirely" the argument Lyons raises here, recognizing that "[t]here are many reasons why" persons of a particular class "might tolerate discrimination against members of their own class, or why they might participate in discriminatory acts

themselves." *Johnson v. Advocate Health & Hosps. Corp.*, 2018 WL 2753066, at \*14 (7th Cir. 2018) (publication pending). Moreover, hiring Ms. Vestal while knowing generally that she was diabetic is a far cry from tolerating her particular disability, and diabetes manifests itself far more seriously for some people than others. At most, Lyons' argument demonstrates that there is evidence that may support a jury verdict in its favor. It does not, however, permit the Court to resolve the competing inferences raised by the evidence in Lyons' favor on summary judgment.[4]

This same evidence also permits a reasonable inference that Lyons failed to reasonably accommodate Ms. Vestal's disability. "Failure to accommodate is a form of ADA discrimination." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015). "[A] plaintiff alleging a failure to accommodate . . . must show that the employer was aware of her disability and still failed to reasonably accommodate it." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005) (internal quotation omitted). This means that the employee has an "initial duty" to "indicate to the employer that she has a disability and desires an accommodation. . . . Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Id.*

Here, Lyons does not argue that unpaid leave for the occasional diabetic episode would be an unreasonable accommodation. Instead, Lyons argues that it provided Ms. Vestal with all reasonable accommodations because she never requested the particular accommodation of needing additional leave when she suffers a debilitating diabetic episode. Lyons further argues that Ms.

---

[4] Lyons' citation to *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 672 (7th Cir. 2000), is a nonstarter. There, summary judgment was upheld where the employer asserted that it terminated the plaintiff because it believed that "she was under the influence of alcohol while seeing patients," but the plaintiff failed to present any evidence showing that this reason was pretextual. *Id.* Here, Ms. Vestal has presented such evidence.

Vestal never made any request through the formal channels as required by Lyons' policies. But the ADA requires neither that Ms. Vestal request the particular accommodation nor that she follow the formal request policy. Rather, Ms. Vestal must do enough to "indicate to her employer" her need for an accommodation. *Id.* Ms. Vestal has proffered uncontroverted evidence that she did just that—she told her coworkers and supervisors, including Ms. Jackson, about her diabetes and what she needed done in the event she suffered a diabetic episode. Furthermore, Lyons knew that Ms. Vestal had diabetic episodes on four occasions that required her to leave work. When considered along with the evidence above, which if believed raises a reasonable inference that Ms. Vestal was fired because of her disability, "a reasonable jury could conclude that [Lyons] was sufficiently aware of [Ms. Vestal's] disability" and decided to terminate Ms. Vestal rather than address Ms. Vestal's need for further accommodations. *Id.*

Without the "rat's nest of surplus 'tests'" that formerly governed consideration of employment discrimination claims, *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016), the Court's sole task is to evaluate whether the evidence, "considered as a whole," would "permit a reasonable factfinder to conclude that the plaintiff's" disability and/or need for accommodation "caused the discharge," *id.* at 765. Ms. Vestal has identified evidence that, if credited by a jury, could permit such a finding. Therefore, the Court **DENIES** Lyons' Motion for Summary Judgment as to Ms. Vestal's ADA claims.

### B. Rehabilitation Act

Lyons next argues that it is entitled to summary judgment on Ms. Vestal's Rehabilitation Act claim because there is no evidence to suggest that Lyons believed Ms. Vestal to be a drug addict. [Filing No. 54 at 17-19.]

In response, Ms. Vestal argues that her claim is based upon Lyons erroneously believing that she was engaged in illegal drug use, not that it believed her to be a drug addict. [Filing No. 57 at 19-22.] Ms. Vestal argues that the Rehabilitation Act "attaches liability to Lyons Health if Vestal meets her burden and proves that Lyons Health incorrectly or 'erroneously' believed Vestal was an illegal drug user and fired her based upon this erroneous belief." [Filing No. 57 at 22.]

In reply, Lyons argues that the Rehabilitation Act provides no protection to Ms. Vestal because she denies using illegal drugs and because there is no evidence to suggest that Lyons regarded Ms. Vestal as an illegal drug user. [Filing No. 59 at 12-19.]

The Rehabilitation Act provides certain protections to individuals with disabilities as defined by the statute. *See Branham v. Snow*, 392 F.3d 896, 902-03 (7th Cir. 2004). "The Rehabilitation Act defines an individual with a disability as 'any person who (i) has a mental or physical impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment.'" *Id.* at 902 (quoting 29 U.S.C. § 705(20)(B)). The provision upon which Ms. Vestal relies provides as follows:

> **(C) Rights and advocacy provisions**
> **(i) In general; exclusion of individuals engaging in drug use**
> . . . [T]he term "individual with a disability" does not include an individual who is currently engaging in the illegal use of drugs, when a covered entity acts on the basis of such use.
> **(ii) Exception for individuals no longer engaging in drug use**
> Nothing in clause (i) shall be construed to exclude as an individual with a disability an individual who--
>> **(I)** has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;
>> **(II)** is participating in a supervised rehabilitation program and is no longer engaging in such use; or
>> **(III)** is erroneously regarded as engaging in such use, but is not engaging in such use;

except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in subclause (I) or (II) is no longer engaging in the illegal use of drugs.

29 U.S.C. § 705(20)(C); *see* 42 U.S.C. § 12114(a)-(b) (materially identical provision from the ADA); *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006) (noting relevance of ADA case law to Rehabilitation Act cases); *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999) (same).

Ms. Vestal specifically relies upon subclause (III), arguing that Lyons "erroneously regarded [her] as engaging" in illegal drug use, despite the fact that she was "not engaging in such use." 29 U.S.C. § 705(20)(C)(ii)(III). But, while such an "erroneously regarded" employee "is not excluded from the protection of the ADA [or Rehabilitation Act], an employee is not automatically protected or a 'qualified person with a disability' when the employer makes such an erroneous determination." *Bailey v. Real Time Staffing Servs., Inc.*, 927 F. Supp. 2d 490, 499 (W.D. Tenn. 2012), *aff'd,* 543 F. App'x 520 (6th Cir. 2013). Rather, "the erroneous perception of being an illegal drug user is to be treated like any other perception of a disability, and is only to be considered a qualifying disability if the employer perceives the disability to substantially limit a major life activity." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998) (collecting cases); *Bailey*, 927 F. Supp. 2d at 499-500 ("Thus, an erroneous belief about drug use will only be a qualifying disability if the employer regarded the perceived drug use as an impairment and took action against the employee because of that perceived impairment. It is not enough that the employer perceived the employee to simply be an illegal drug user to receive ADA protection; perceiving someone as having an impairing substance abuse problem is very different from perceiving them to be a casual or recreational drug user.").

Ms. Vestal is incorrect that the Rehabilitation Act provides for liability whenever an employer incorrectly believes that an employee used illegal drugs. Rather, as the statutory text and case law indicate, the erroneous perception of drug use is relevant only as an exception to the rule that current illegal drug use is not a qualifying disability. Ms. Vestal must still demonstrate that Lyons regarded her as having an impairment due to drug usage. Ms. Vestal argues that Lyons claims that it fired Ms. Vestal for violating workplace policy by working under the influence of drugs. Whether or not that claim is honest or correct, it does not trigger liability under the Rehabilitation Act in the absence of evidence showing that Lyons believed her to have an impairment due to drug use. Ms. Vestal has provided no such evidence, and in fact has denied that she used drugs or that Lyons had any reason to believe her to be impaired due to drug usage. The Court therefore **GRANTS** Lyons' Motion for Summary Judgment as to Ms. Vestal's Rehabilitation Act claim.

### C. Negligent Drug Testing

Lyons next argues that it is entitled to summary judgment on Ms. Vestal's negligent drug testing claim because Indiana law does not, and would not, impose a duty on private employers to perform drug tests with reasonable care. [Filing No. 54 at 19-24.] Lyons argues that, in addition to the absence of Indiana authority, the relevant considerations weigh against imposing such a duty. [Filing No. 54 at 21-24.]

In response, Ms. Vestal argues that two Indiana federal court decisions and the decisions in several other states point to the imposition of a duty in this case. [Filing No. 57 at 22-25.] Ms. Vestal also raises several alternative arguments, arguing that the Court should certify the question to the Supreme Court if it does not believe a duty exists, as it did in *Lockhart v. ExamOne World Wide, Inc.*, 904 F. Supp. 2d 928, 943-46 (S.D. Ind. 2012); that Lyons voluntarily assumed a duty

of care by conducting the drug screen; and that Lyons owed a duty to protect its employees from its own negligence. [Filing No. 57 at 22-27.]

In reply, Lyons reiterates its arguments and distinguishes the cases upon which Ms. Vestal relies. [Filing No. 59 at 13-15.] Lyons also argues that it did not assume a duty because there was no legal duty to assume and that the duty to protect Ms. Vestal from its own negligence does not extend beyond physical protection for employees and their possessions. [Filing No. 59 at 15-17.]

As a federal court applying state law, the Court is tasked with making "a predictive judgment as to how the supreme court of the state would decide the matter if it were presented presently to that tribunal." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 635 (7th Cir. 2002). In undertaking this task, the Court is mindful of the Seventh Circuit's guidance in dealing with state law:

> Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims. When confronted with a state law question that could go either way, the federal courts usually choose the narrower interpretation that restricts liability. Innovative state law claims should be brought in state court.

*Insolia v. Philip Morris Inc.* 216 F.3d 596, 607 (7th Cir. 2000); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) (same). "If there are no directly applicable state decisions at all, then we may consult relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data that might be persuasive on the question of how the Indiana Supreme Court would likely rule." *BMD Contractors, Inc. v. Fid. & Deposit Co. of Md.*, 679 F.3d 643, 648 (7th Cir. 2012).

Under Indiana law, a negligence action requires "duty owed to plaintiff by defendant," breach of that duty, and damages caused by the breach. *Goodwin v. Yeakle's Sports Bar & Grill,*

*Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). At issue here is duty, without which a plaintiff's negligence claim must fail. *Id.* Duty is determined as a matter of law by the court. *Id.* at 386-87.

As both parties recognize, no Indiana decision, either by a state appellate court or a federal court applying state law, has found a duty of care with respect to an employer-conducted drug test. However, it also appears that no decision has rejected such a duty. In the absence of such a decision, the Court must broaden its search, mindful of the general preference that federal courts decline to broaden state law. Both parties look to Indiana's thee-part balancing test, which the Indiana Supreme Court has endorsed as a "useful tool in determining whether a duty exists . . . in those instances where the element of duty has not already been declared or otherwise articulated." *Id.* at 387 (internal quotation omitted). This test requires the Court to analyze "(1) the relationship between the parties; (2) the foreseeability of harm; and (3) public policy concerns."[5] *Id.* "[N]otwithstanding the helpfulness" of this test "in many situations, a precise formulation of the basis for finding duty has proven quite elusive." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). Ultimately, "[n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Id.* (quoting *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1988)).

*Lockhart v. ExamOne World Wide, Inc.*, 904 F. Supp. 2d 928 (S.D. Ind. 2012), an opinion discussed by both parties in their briefing, begins to address some of the factors that are relevant

---

[5] The Indiana Supreme Court has disapproved of *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), which first articulated this three part test, to the extent that it formulated foreseeability in the duty analysis as identical to foreseeability in the proximate causation analysis. *Goodwin*, 62 N.E.3d at 931.

to the duty analysis in the employment drug testing context.[6]  *Lockhart* emphasizes that Indiana's at-will employment doctrine places employees in a unique relationship with their employers, *id.* at 945, inasmuch as an at-will employee may generally be fired for a "good reason, bad reason, or no reason at all," *Myers v. Myers*, 861 N.E.2d 704, 706 (Ind. 2007) (internal quotation).  This means, as the cases collected by the *Myers* Court explain, that employers can terminate their employees for things such as filing for unemployment benefits, refusing to submit to a polygraph, and complaining about a supervisor's improper actions.  *Id.* at 707 (collecting cases).  *Myers* reiterates, as the Indiana Supreme Court had earlier held, that "the employment at will doctrine has steadfastly been recognized and enforced as the public policy of this state and that revision or rejection of the doctrine is better left to the legislature."  *Id.* (internal quotations and alteration omitted).

As *Lockhart* and Indiana's three-prong test recognize, the at-will employment relationship is relevant, but not determinative, in assessing whether Indiana law would impose a duty on employers conducting drug testing.  In *Lockhart*, the undersigned certified the following question to the Indiana Supreme Court: "Does a private employer owe a duty of care to an at-will employee in the context of workplace drug testing?  If so, what is the nature of any duty owed?"[7]  904 F. Supp. 2d at 945.  Ms. Vestal argues that the Court should answer the first question in the affirmative, but cites to no case indicating that the state of the law, in Indiana or elsewhere, has changed since *Lockhart*.  Moreover, recognizing a duty in this case would require the Court to

---

[6] The second Indiana district court opinion cited by Ms. Vestal provides no guidance, as the only issue before the court was whether to remand the case to state court for lack of diversity jurisdiction.  *Hook v. Gen. Elec. Co.*, 761 F. Supp. 627 (S.D. Ind. 1990).  Because the case was remanded, the court never reached the merits of the plaintiff's negligence claim.  *Id.*

[7] The Indiana Supreme Court did not have the opportunity to answer the certified question, as the matter settled shortly after certification.  *See Lockhart*, No. 2:11-cv-00037-JMS-WGH (dismissed Jan. 30, 2013).

recognize a much broader duty than that at issue in *Lockhart*. In *Lockhart*, the plaintiffs alleged negligence claims after they were made to provide urine samples while watched by an individual hired by their employer. The employer had a drug testing policy which did not mention the possibility that they could be monitored while providing a urine sample. The scope of a duty that would have covered the plaintiffs' claims could be far narrower than a general duty of care with respect to testing accuracy. While, given the state of the law, it is impossible to describe precisely what duty would have sufficed for the *Lockhart* plaintiffs to state a claim, perhaps it could have been as limited as a duty not to subject employees to physically-invasive drug screening without cause or prior notice. All this means is that even had the Indiana Supreme Court had found a duty in *Lockhart* in response to the certified question in that case, it does not necessarily follow that it would find a duty in this case were the issue before it.

This at-will employment relationship suggests that the Indiana courts would exercise great restraint before imposing a duty on an employer to reasonably perform a drug test. As Ms. Vestal's argument demonstrates, the parameters of a negligence drug testing claim may differ in several ways from a wrongful discharge claim. For example, a negligently conducted positive drug test could carry with it compensable collateral consequences that would not be recoverable for a mere wrongful discharge. Ms. Vestal raises important public policy concerns in this regard. But Lyons likewise raises important public policy concerns, such as the possibility that an employer, which may properly terminate an employee upon a mere suspicion of illegal drug use, would elect to entirely forego drug testing should it face the possibility of liability. Moreover, it seems incongruous for an employer to be able to terminate an employee based upon an incorrect, untested finding that an employee is under the influence, but nonetheless face liability for an incorrectly administered drug test. This discussion highlights the sensitive policy determinations at play in

recognizing a new duty, determinations that the Seventh Circuit has held should be left to the state courts.

One option would be, as Ms. Vestal suggests, to certify the issue to the Indiana Supreme Court, as the Court did in *Lockhart*. But certification is not appropriate merely because there is an absence of state-court authority on a particular issue, as courts "simply cannot certify every creative but unlikely state cause of action that litigants devise from a blank slate." *Insola*, 216 F.3d at 607. Ms. Vestal's proposed extension of Indiana law does not rest on a completely blank slate, but recognizing a duty in this case would require an even greater expansion of state law than would have been required in *Lockhart*. Most importantly, the authority supporting Ms. Vestal's claim fails to generate "genuine uncertainty" as to how the Indiana Supreme Court would resolve the issue. *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 754 (7th Cir. 2018).

Ms. Vestal has failed to identify any Indiana authority suggesting a willingness to expand employer liability. Ms. Vestal identifies out-of-state authority from several states, but these cases arise in a very different context, imposing a duty of care on third-party drug testers and not the employers themselves. *See generally Webster v. Psychemedics Corp.*, 2011 WL 2520157, at *4-5 (Tenn. Ct. App. 2011) ("Significantly, the appeal before us does not involve an employer. Rather, it concerns a negligence action against a laboratory.") (collecting cases from several jurisdictions imposing a duty of reasonable care on third-party drug testers). Ms. Vestal does not direct the Court to any decisions imposing such a duty on employers, and the Court's research on the matter revealed only decisions declining to do so. *E.g.*, *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 716 (Tex. 2003) ("Just as we have consistently preserved the doctrine of employment-at-will from encroachment by other liability theories, we decline Solomon's

invitation to adopt a new theory of liability for negligent drug testing."); *Bellinger v. Weight Watcher Gourmet Food Co.*, 756 N.E.2d 1251, 1257 (Ohio Ct. App. 2001) ("Weight Watchers owed no duty to appellant as to drug testing as appellant was an employee-at-will. Weight Watchers could have discharged appellant without even conducting drug tests."); *Baca v. Fisher Sand & Gravel, Co.*, 2010 WL 11493830, at *7 (D.N.M. 2010) (interpreting New Mexico law) ("In this case, Plaintiffs Baca and Ulibarri do not dispute they were at-will employees. Consequently, Fisher owed no duty to Plaintiffs Baca and Ulibarri to conduct drug testing in any particular manner, and it was entitled to discharge them whether they failed or passed the drug test or give no reason at all for their termination."). Several states have imposed a duty of care by way of statute. *E.g.*, *Mike v. Prof'l Clinical Lab., Inc.*, 450 F. App'x 732, 735-37 (10th Cir. 2011) (applying Oklahoma law); *Lewis v. Ashland, Inc.*, 813 F. Supp. 2d 1113, 1117 (D. Minn. 2011) (applying Minnesota law). The Court is persuaded that Indiana would leave expansion of employer tort liability to the legislature, just as it concluded that "revision or rejection" of the at-will employment doctrine "is better left to the legislature." *Myers*, 861 N.E.2d at 707 (internal quotations and alteration omitted). The weight of authority supports this conclusion, and the Court therefore declines both to recognize the new duty and to certify the issue to the Indiana Supreme Court.

Ms. Vestal's alternative theories do not save her negligent drug testing claim. Ms. Vestal suggests that Lyons voluntarily assumed the duty of reasonable care in performing the drug test. The scope of the voluntary assumption doctrine would swallow the rule if it created a duty here where Indiana law does not recognize a duty. But the doctrine is not so broad, as it applies only where the actor, undertaking services to another, "knows or should know that the services will reduce the risk of physical harm to the other." *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind.

2014) (quoting Restatement (Third) of Torts: Physical & Emotional Harm § 42 (2012)). The Indiana Court of Appeals "decline[d] to extend the assumption of duty doctrine," as set forth in the Restatement, "to situations involving non-physical harm, such as harm to one's reputation." *McCollough v. Noblesville Schs.*, 63 N.E.3d 334, 346 (Ind. 2016). This limitation is dispositive as to Ms. Vestal's voluntary assumption theory.

Finally, Ms. Vestal's claim is not saved by the longstanding "principle that it is an employer's duty to protect its employees from its own negligence." *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 84 (Ind. Ct. App. 1996). While "typically applied in reference to physical injuries incurred in the employer/employee relationship," Ms. Vestal correctly points out that, in limited circumstances, "this general principle has also been extended to include economic injury." *Id.* at 85. The principle, as referenced in the cases to which Ms. Vestal cites, appears to be a background principle concerning the employment relationship, and not a freestanding basis for imposing liability. Critically, however, even on its own terms this principle is triggered only where the employer (or its agent) committed an underlying negligent act—which again requires that the law recognize a duty to perform the underlying act with reasonable care. For the reasons described above, Indiana law does not impose a duty on employers to conduct employee drug tests with reasonable care. The principle that the employer must protect its employees from its negligence has no application in this case.

The foregoing discussion does not diminish the important concerns Ms. Vestal has raised in support of a duty of care in employer-conducted drug testing. However, the Court is required to "choose the narrower interpretation [of state law] that restricts liability" absent strong evidence that the Indiana Supreme Court would decide the issue differently. *Insolia*, 216 F.3d at 607. Ms. Vestal has not come forth with such authority and, in fact, the weight of authority militates against

recognizing a judicially-created duty in this context. The Court therefore **GRANTS** Lyons' Motion for Summary Judgment as to Ms. Vestal's negligent drug testing claim and declines to certify to the Indiana Supreme Court the issue of whether a duty exists.

### D. Negligent Infliction of Emotional Distress

Finally, Lyons argues that it is entitled to summary judgment on Ms. Vestal's negligent infliction of emotional distress claim because it did not breach a duty to Ms. Vestal, because there was no direct impact, and because Ms. Vestal has failed to establish emotional distress resulting from the drug test. [Filing No. 54 at 24-27.] In response, Ms. Vestal argues again that the Court should certify the issue of duty to the Indiana Supreme Court if it does not conclude that one exists, that there is evidence of a direct impact, and that she has "alleged serious emotional distress." [Filing No. 57 at 29-31.] Lyons reiterates its arguments in reply and further argues that Ms. Vestal's response brief misconstrues the evidence. [Filing No. 59 at 17-19.]

"The right to seek damages for emotional distress in actions for negligence often referred to as actions for negligent infliction of emotional distress, is carefully circumscribed under Indiana jurisprudence." *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011). It is not a stand-alone cause of action, but instead is permitted, as relevant here, where the "defendant's breach of a legal duty to the plaintiff" causes a "direct impact" upon the plaintiff. *Id.* The emotional distress required to sustain such a claim must be "serious in nature and of a kind and extent normally expected to occur in a reasonable person." *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 995-96 (Ind. 2006) (internal quotation omitted). But where the direct impact is minimal, Indiana law requires the Court to scrutinize whether the "alleged mental anguish" is "likely speculative, exaggerated, fictitious, or unforeseeable." *Id.* at 999.

Lyons argues that the factual record does not yield the reasonable inference that a direct physical impact (Ms. Vestal asserts that Ms. Crane helped Ms. Vestal undress to conduct the drug test) occurred. But the Court need not address this argument because, even assuming that Ms. Crane helped Ms. Vestal undress, Ms. Vestal's claim nonetheless fails. First, as *Spangler* explains, negligent infliction of emotional distress is not an independent tort, but requires a breach of a legal duty by the defendant to the plaintiff. As explained above, Lyons did not owe a legal duty of care with respect to the drug testing, and certification of this issue is not warranted.

Second, even if Lyons did owe a duty, Ms. Vestal fails to establish serious mental anguish as a result of the drug test. In response to Lyons' interrogatory asking Ms. Vestal to describe her emotional distress "with particularity," Ms. Vestal responded that she "certainly experienced significant stress and anxiety after my wrongful termination." [Filing No. 55-18 at 13-14.] At her deposition, Lyons' counsel asked Ms. Vestal about the drug test, and she responded that she could not "recall what happened in the bathroom." [Filing No. 55-5 at 2.] Lyons' counsel followed up: "[I]f you can't remember what happened, you wouldn't have suffered any stress or anxiety from that situation [in the bathroom]; correct?" [Filing No. 55-5 at 2.] Ms. Vestal responded: "Not from in the bathroom, if I can't recall." [Filing No. 55-5 at 2.]

Ms. Vestal seeks to establish mental anguish from the drug test based upon her inability to recall what happened and her "alleg[ations]" that she suffered emotional distress as a result. [Filing No. 57 at 30.] The inability to remember what happened is simply not evidence that generates a genuine issue of material fact as to whether Ms. Vestal suffered serious mental anguish, and whether she has alleged such anguish is irrelevant on summary judgment, where the nonmovant must come forth with evidence to demonstrate that a trial is required. *See* Fed. R. Civ. P. 56; *Sterk*

*v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). Ms. Vestal has pointed to no other evidence to establish serious mental anguish.

Ms. Vestal has not established that Lyons owed her a duty of reasonable care with respect to the drug test or that a genuine issue of material fact exists with respect to her claim of serious emotional distress as a result. The Court therefore **GRANTS** Lyons' Motion for Summary Judgment as to Ms. Vestal's claim for negligent infliction of emotional distress.

## IV.
### CONCLUSION

Ms. Vestal has provided sufficient evidence that, if credited, could convince a reasonable jury that she was terminated not because she had used drugs, but because she was diabetic and because Lyons did not wish to accommodate her diabetes. The Court therefore **DENIES** Lyons' Motion for Summary Judgment [53] as to Ms. Vestal's ADA claims, which shall be resolved either by negotiated resolution or at trial. The remainder of Ms. Vestal's claims fail either for lack of evidence or due to legal shortcomings, and the Court therefore **GRANTS** Lyons' Motion as to Ms. Vestal's Rehabilitation Act and state-law negligent drug testing and negligent infliction of emotional distress claims.

The Court requests that the Magistrate Judge confer with the parties regarding the possibility of settlement. Should settlement efforts fail to fully resolve the remaining claim, the Court will establish a schedule for the trial of this matter.

Date: 6/15/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**